**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 20-18** |
| **MICHELLE CUTTINO** | **:** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Michelle Cuttino, a registered nurse practitioner, participated in an illegal health care fraud conspiracy involving telemedicine company owners, medical professionals, durable medical equipment company owners, and international call center owners. In her role as a nurse practitioner, Cuttino signed orders for orthotic braces—a type of durable medical equipment ("DME")—which were medically unnecessary and in some instances without ever speaking to patients. Over the course of the scheme, Cuttino submitted or caused the submission of over $8.6 million in false and fraudulent claims to Medicare, causing Medicare to pay over $4.4 million for these false and fraudulent claims. For these reasons, as well as for the reasons provided below, the government recommends a significant sentence consistent with all the factors under Section 3553(a), as further addressed in the Sealed Supplement.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. <u>BACKGROUND</u>

On January 13, 2020, Cuttino was charged by Information with one count of health care fraud, in violation of 18 U.S.C. § 1347, arising from the defendant's involvement in a national

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

telemedicine fraud scheme involving the billing of Medicare for medically unnecessary DME. On January 30, 2020, the defendant pleaded guilty to the Information. On October 27, 2026, the defendant is expected to appear before this Court to be sentenced for this offense.

Cuttino is a certified registered nurse practitioner licensed to practice in Pennsylvania, Delaware, and New York. Between June 2017 and August 2019, Cuttino worked for multiple telemedicine companies including Telemedicine Company A, Telemedicine Company B, and others. PSR ¶ 16. Telemedicine Company A and Telemedicine Company B paid Cuttino to sign orders for orthotic braces. PSR ¶¶ 16, 18, 20. The defendant signed orders in the absence of a pre-existing patient relationship and without physical examinations. PSR ¶ 17. Cuttino frequently signed brace orders for beneficiaries after only a short telephonic conversation or without any conversation or interaction whatsoever. *Id.* Cuttino signed thousands of orders for braces that were medically unnecessary to increase revenue for herself, Telemedicine Company A, Telemedicine Company B, and others.

Cuttino and others concealed the scheme by falsifying, fabricating, altering, and causing the falsification, fabrication, and alteration of patient files, brace orders, and other records. Cuttino prepared fraudulent brace orders, including by providing a false attestation that the order contained information that was “true, accurate and complete” to the best of her knowledge, when in fact, Cuttino knew she was causing the submission of false and fraudulent claims to Medicare. Cuttino also falsely attested to having had conversations with beneficiaries who she had never met.

Cuttino and others submitted or caused the submission of false and fraudulent claims to Medicare in the amount of $8,675,498.35 for braces that were procured through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as

represented. Medicare paid $4,440,421.43 to brace suppliers based on those claims. Cuttino personally profited approximately $96,571.00 from this scheme based on her "consultation" fees from Telemedicine Company A, Telemedicine Company B, and others.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

For a violation of 18 U.S.C. § 1347, the maximum statutory sentence is 10 years' imprisonment, up to 3 years supervised release, a fine that is the greater of $250,000 or twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571, and a special assessment of $100.

### B. Sentencing Guidelines Calculation

The PSR calculated the defendant's offense level as 25. However, the Guidelines were amended after the PSR was prepared to include a two-level reduction for defendants meeting the criteria set out in Section 4C1.1 for zero-point offenders. The defendant qualifies for the zero-point offender reduction, resulting in an additional two-point reduction for the defendant. As a result, the defendant's offense level is 23. The defendant's complete Guidelines are as follows:

1. Base Offense Level. Pursuant to USSG § 2B1.1, the base offense level is 6.
2. Specific Offense Characteristics. Pursuant to USSG § 2B1.1(b)(1)(J), the intended loss amounted to approximately $8.6 million, and the actual loss amounted to approximately $4.4 million, resulting in an increase of 18 levels to the base offense level.[2]

---

[2] Whether the loss is calculated as the amount billed or the amount paid is irrelevant here, as both the billed and paid amounts yield the same Guidelines enhancement. *See United*

*continued . . .*

3. <u>Specific Offense Characteristics</u>. The defendant was convicted of a federal health care offense involving a loss of more than $1 million, resulting in an increase of 2 levels. USSG § 2B1.1(b)(7)(i).

4. <u>Role Adjustment</u>. The defendant used her position as a licensed nurse practitioner in the commission of the crime, resulting in an increase of 2 levels for abuse of this position of trust. USSG § 3B1.3.

5. <u>Zero-Point Offender Adjustment</u>. Pursuant to USSG § 4C1.1, the offense level is reduced by two points for the defendant's status as a zero-point offender (- 2 levels).

6. <u>Acceptance of Responsibility</u>. Pursuant to USSG § 3E1.1(a) and (b), the offense level is reduced by a total of three points for acceptance of responsibility (- 2 levels) and timely notification to authorities of the defendant's intent to plead guilty (- 1 level).

This results in a total offense level of 23, which carries a range of imprisonment of 46 to 57 months, as the defendant falls within criminal history category I.

## III. <u>ANALYSIS</u>

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."

---

*States v. Banks*, 55 F.4th 246, 258 (3d Cir. 2022) (holding that the fraud loss amount in Section 2B1.1 of the Guidelines only incorporates actual losses, rather than intended losses, and disregarding the loss amount commentary to Section 2B1.1); *cf.* United States Sentencing Guidelines, Amendment 827 (effective November 1, 2024) (clarifying that loss amount is the greater of actual loss or intended loss, and moving the loss amount commentary up to within Section 2B1.1).

*Gall v. United States*, 552 U.S. 38, 49 (2007). “These requirements mean that ‘[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range.” *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). “Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences.” *Peugh*, 569 U.S. at 543. “The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing.” *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Consideration of the 3553(a) Factors Regarding Imprisonment**

**i. Nature of the Offense and Characteristics of the Defendant**

The charged long-running health care fraud conspiracy was not a momentary lapse of judgment, but rather a crime that lasted over two years in which the defendant, together with others,

knowingly and repeatedly falsified orders to bill Medicare.

In committing a health care fraud in connection with a health care benefit program, the defendant placed her own financial greed over taxpayer dollars and the health of thousands of Medicare beneficiaries. As a result of her health care fraud, the defendant caused Medicare to pay over $4.4 million in false and fraudulent claims. The defendant also ordered orthotic braces for Medicare beneficiaries regardless of whether the brace would actually treat their illness or injury, leaving the beneficiaries without actual medical care and with the false impression that they had been treated by Ms. Cuttino, a medical professional.

The defendant has acknowledged the crime that she committed: she has accepted responsibility and pleaded guilty.

**ii. The Need to Reflect the Seriousness of the Crime, to Promote Respect for the Law, and to Provide Just Punishment**

The defendant systematically committed a crime against Medicare—a vital government benefit relied upon by millions of the country's neediest citizens—and siphoned proceeds for her personal benefit. Congress aptly summarized the effects of the defendant's crime over thirty years ago:

> In whatever form it is found . . . fraud in these health care financing programs adversely affects all Americans. It cheats taxpayers who must ultimately bear the financial burden of misuse of funds in any government-sponsored program. It diverts from those most in need, the nation's elderly and poor, scarce program dollars that were intended to provide vitally needed quality health services.

H.R. 95-393, pt. II, at 44 (1977). *See also* H.R. Rep. 104-747 (1996) ("Everyone pays the price for health care fraud: beneficiaries of Government health care insurance such as Medicare and Medicaid pay more for medical services and equipment; consumers of private health insurance pay higher premiums; and taxpayers pay more to cover health care expenditures.").

### iii. The Need to Provide General and Specific Deterrence

The sentence imposed needs to deter not only the defendant, but also similarly situated medical professionals from engaging in fraudulent behavior. Health care fraud conspiracies threaten the integrity of the Medicare program. Because the profits of these schemes are often enormous—the only limiting variables are the criminals' ability to manufacture Medicare claims and their likelihood of getting caught—it is critical to address the problem through systematic deterrence.

Crimes against Medicare, like the one perpetrated by the defendant, are typically difficult to detect and prosecute, so there is a greater need for general deterrence. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties"). Moreover, because "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *See, e.g., United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, *White–Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (internal quotation marks omitted)); *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). The defendant is an example of this "calculating" criminal; the defendant's behavior may be explained, in part, by a perception of a high likelihood of reward and low likelihood of punishment.

Congress recognized the need to afford adequate deterrence as "particularly important in

the area of white-collar crime" when it adopted Section 3553. *See* S. Rep. No. 98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259. Congress rightly was disturbed that "white collar criminals often are sentenced to small fines and little or no imprisonment," and noted that, "[u]nfortunately, this creates the impression that certain offenses . . . can be written off as a cost of doing business." *Id*. In adopting the Section 3553 sentencing factors, Congress emphasized the essential deterrent value of imprisoning white-collar criminals, even when those criminals themselves might be unlikely to reoffend:

> The Committee is of the view that in the past there have been many cases, particularly in the instances of major white collar crime, in which probation has been granted because the offender required little or nothing in the way of institutionalized rehabilitative measures . . . and because society required no insulation from the offender, without due consideration being given to the fact that the heightened deterrent effect of incarceration and the readily perceivable receipt of just punishment accorded by incarceration were of critical importance. The placing on probation of [a white-collar criminal] . . . may be grossly inappropriate . . . in cases in which the circumstances mandate the sentence's carrying substantial deterrent or punitive impact.

*Id*. at 91-92.

The defendant's punishment should account for the need to deter others from improperly billing or causing the billing of false and fraudulent claims to Medicare. Crimes against Medicare, including causing the billing of false, fraudulent, and unnecessary claims, are a serious problem that has warranted national law enforcement attention. In determining a just sentence, the Court should consider the need to promote respect for the criminal laws to deter other Medicare providers, who, like the defendant, may be tempted to place their financial interests above all else.

**iv. The Sentencing Commission's Guidelines and Policy Statements**

The applicable Guidelines calculation for the defendant was described in Section II.B above. There are no applicable policy statements that would alter the government's recommendation.

**v. The Need to Avoid Unwarranted Sentencing Disparities**

The need to avoid unwarranted sentencing disparities may be achieved through careful calculation and review of the Guidelines range. *See, e.g.*, *Gall*, 552 U.S. at 54 ("Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").

**vi. The Need to Provide Restitution**

Pursuant to 18 U.S.C. § 3663A, the government seeks restitution in the amount of $4,440,421.43, which reflects losses sustained by Medicare, the sole victim here, as a result of the defendant's offense conduct. The defendant agreed to pay this restitution in paragraph 8 of the plea agreement. The restitution payments should be made to U.S. Centers for Medicare & Medicaid Services, Division of Accounting Operations, 7500 Security Boulevard, Baltimore, Maryland 21244.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition a significant sentence consistent with all the factors under Section 3553(a), as further addressed in the Sealed Supplement.

**B. <u>Supervised Release</u>**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is

imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least one year is warranted. As explained above, the defendant engaged in a years-long conspiracy to defraud Medicare through her work at multiple employers. Supervision following release from imprisonment is warranted to aid her reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7).

This assessment also supports imposition of all the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as a special condition which prohibits the defendant from billing or causing the submission of claims to a government health care program, other than for medical care provided to herself or her family members.

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a significant sentence is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division

*Margaret P. Mortimer*
DARREN C. HALVERSON
Assistant Deputy Chief
MARGARET P. MORTIMER
Trial Attorney
National Fraud Enforcement Division

**CERTIFICATE OF SERVICE**

I certify that a copy of this Sentencing Memorandum has been filed electronically in the Clerk's Office Electronic Case Filing (ECF) system and is available for viewing and downloading from the ECF system, and that a true and correct copy of the motion and proposed order were served upon counsel for the defendant by electronic filing, as follows:

MARC DURANT
mdurant@durantlaw.com

/s/ Margaret P. Mortimer
MARGARET P. MORTIMER
Trial Attorney

Date: October 14, 2026